Okay, great. Thank you. Good morning. May it please the court, Fahar Fahm, on behalf of Mr. Higginbotham. And when I read this case, I looked at the plea and all the proceedings, and all Mr. Higginbotham wanted to do was tell his side of the story. He did not intend to lie. He just wanted to make sure that the court heard his side of the story. And according to the plea agreement, he was allowed to challenge the firearms in the truck and in the storage room. That was part of the plea agreement. They knew what the plea agreement said. The plea agreement said he went into the storage Whatever he said on the subject, that subject was expressly reserved under the plea agreement. But that doesn't mean that whatever he said on that subject, he had sort of blanket use immunity, and he could not, you know, be assessed for either obstruction or, you know, loss of acceptance of responsibility, if he said things in there that were perjurious. And the government expressly reserved in the plea agreement post plea obstruction as well. So there are kind of a lot of different pieces here. And it seems like, you know, you have to thread between those. Okay, but they, but to him and the way the agreement was presented to him, he was allowed to say what he was going to say. He didn't, in his mind, the plea agreement said that he could, he could challenge those specifically, that he could challenge those. And the government never said, look, you want an evidentiary hearing. They knew what he was going to say. They had all the evidence. They knew what he was going to say. And so he just told his side of the story. Now, to me, just reading it, the evidentiary hearing was not sentencing. He didn't, what they didn't do was specify exactly what sentencing was. What at sentencing, he got up, he told his story, he apologized. I'm sorry, if you didn't believe me, but I understand where you're coming from, he said to the court, and he accepted full responsibility. And so where's the obstruction? It is specifically said at sentencing. So he got up at sentencing, he said what he was going to say. So he didn't deserve the enhancements for obstruction of justice. Ms. Arfa, did you, or did he, through counsel, raise this claim that the government breached? I understand. I take that in most of the colloquies, the extent there is an objection, it appears that he was raised a claim that he did not breach. But I take your claim here to that the government breached. Where is that in the district court record? And why wouldn't we review for plain error? Well, because the plea agreement was clear. I think at sentencing, trial counsel specifically said, look, he had this, everything was clear. So that's, so he didn't say anything that they didn't know he wasn't going to say. So even under plain error, even under plain error, I did a lot of the research on the plain error. And it seems that he would fall under the category of de novo review. And even under the plain error standard, he would still qualify as error. Okay. So there's nowhere you're drawing our attention to right now that reflects an objection that the government had breached the agreement. Well, I think there was, when I looked at the sentencing, there was plenty to show that counsel made it clear that he complied with the agreement. Right. But I think Judge Johnstone's question is, did counsel ever say, hey, what the government's doing here now is in contrary to the plea agreement. They're not doing what they were obligated to do. Was that ever called to the district court's attention? I don't think he said exactly those words, but I do know that he did object. He didn't use the word object, but he said... He certainly took the substantive position the adjustment shouldn't apply. Yes. But that's kind of the merits. The question is, was the government breaching the agreement at the sentencing? And that wasn't raised or called to the district court's attention, and that would suggest we would review only for plain error. Okay. Well, I respectfully disagree. I looked at the sentencing proceedings, and it was clear that trial counsel specifically didn't use the word object. But he said, look, this was part of the plea agreement. They knew he was going to do this. And... Counsel, when you say this, what are you referring to? That he was going to tell his story and they knew exactly what he was going to say. But that that story was going to be different than what he had said earlier in the proceedings? I'm sorry. No, his story has changed, correct? The story between what the plea was and what he testified to at the evidentiary hearing? Yes. Um, I, I don't think he ever agreed. I don't think he ever agreed that he possessed the firearms in the truck and in the storage room. Well, what was he playing to then? He was saying that I didn't have that. They belong to his wife. It's in the plea agreement in the footnotes. He said that he didn't own those things. But he acknowledged one gun. He agreed to play to one gun, which is what he did. He pleaded and then in the plea agreement in the footnotes. It's very clear that he challenged both of those things in the plea agreement. He said his his wife owned the firearms in the storage unit. And it's it's all there. Right. But, but I guess, right. So in the footnotes, what I see in the footnotes there is that he reserved the right under the agreement to argue who possessed the firearms in the truck. But there are ways in which he could do so that did not directly conflict the factual basis that he agreed to. And it looked like I think his story continued to transform. Throughout the time here, but he directly contradicted the facts, the factual basis, did he not? Well, when you look at there are two footnotes, footnote one. And let's see, there's another one on ER 284, where he's going to challenge the firearms in the storage unit and disputes he had access and control to them. But it's in the plea agreement that he had access and control. So I just think we're dealing with somebody who's not familiar with all of the legal jargon who didn't understand what access constructive possession was. I'd like to save some time for rebuttal. All right. Thank you, counsel. Thank you. All right, then we'll hear from Mr. Connolly. All right, you may proceed. Yes, good morning, Your Honors. If it please the court, James Connolly on behalf of the United Mr. Higginbotham had obstructed justice as intended under section three. Do you understand what counsel's argument is? The plea agreement expressly reserves the dispute over the other guns. And you knew at some level what the core of his position on that was going to be. So it's sort of a bit of a trap. You know, you reserve the issue knowing that there's a obstruction of justice and lose the the adjustment for acceptance of responsibility. Why isn't that a breach of the plea agreement? Well, that is it, Your Honor. It wasn't a trap and it's not a breach of the plea agreement because what he what he agreed to specifically in the plea agreement was that the guns belong to his wife and that he had no control over the guns in the truck and he had no control over nor access to the guns in the storage unit. And those are both facts that the court found as a as a finding on the record that those were both false statements. And while the government allowed in the plea agreement and Mr. Higginbotham was well familiar with the plea agreement as his counsel made clear at the change of plea, while the government allowed him to dispute that, he had staked a position in the plea agreement that they belonged to his wife. He'd also staked the position about access and control. From there, as the court had pointed out, yes, in the evidence, his story had shifted multiple times. So at any point prior to the, you know, up to the plea agreement, did he ever, you know, raise the story about pops? In the court record, no, but it was in evidence and his defense attorney had that evidence and I had discussed that with them. And and the fact is that he had the right to dispute that under the plea agreement. But he had already, as I said, staked the position that they belong to his wife. But he did not have the right then to present false evidence in order to do that. He could have cited two other facts in the record. He could have argued other evidence in the record. And he could have remained silent. Section 3E1.1 allows for that. It allows them to disclaim responsibility while, but they cannot then falsely or frivolously contest that responsibility. They can remain silent or they can argue evidence that is fair, accurate, subject to cross examination. So the issue was reserved, but in litigating the issue, he didn't have sort of use immunity to say whatever he wanted. That is correct. OK. Can you help me understand, I guess, the there seems to be two moving parts to what Mr. Higginbotham charges as potential breaches by the government, the failure to recommend acceptance of responsibility and then the obstruction piece. With respect to the obstruction piece, do you take the plea agreement to have that conditioned on anything? I mean, the agreement itself in Part 6B says it contains the condition. But then later on, it says that there seems to be just a general reservation of the government's rights to ask for obstruction. Well, as I understand, the obstruction conditioned on anything that the government does. I mean, it looked like I read the plea agreement perhaps to contain just a general blanket reservation of the government's power that's not conditioned on anything that could be breached to argue for obstruction. For post plea obstruction of justice, the plea agreement cites to Section 3C1.1. And under that, that 3C1.1 in the application notes has as possible ways of obstructing justice lying to or presenting false information to a judge or magistrate judge. And so that is sweeping and encompassing. And so it's clearly reserved there. As the lower court pointed out, Section 3E1.1 does tie to obstruction of justice, especially post plea obstruction of justice, in the sense that if one is disclaiming responsibility for acts and conduct, relevant conduct that the defendant has done. Right. I mean, I take the sentencing predicate for that, but I guess I'm trying to figure out the agreement isn't crystal clear on in terms of what the obstruction of justice, post plea obstruction of justice turns on. Because it occurs both in Part 3, the government's obligations, 3B2, which says the government will recommend, you know, a two level reduction if it includes not engaging in conduct that constitutes obstruction of justice under 3C1.1. But then it comes back in kind of a perhaps unconditional form later on in 7B, waiver of legal and collateral attack. So I'm just not sure how to fit this. I'm sorry. In 5B, apart from reserving the right to argue the number of firearms involved in the charge conduct, which is an unconditional reservation of rights, the parties will not argue in favor of other specific defense characteristics, except the government may move for a departure or adjustment based on the defendant's post plea obstruction of justice. So is the obstruction departure adjustment conditioned in Part 3 or unconditioned in Part 6? Well, Your Honor, actually, I would refer the court to the plea agreement under acceptance of responsibility first, and there will be more. But that's a 2ER277 that the government's recommending reduction for acceptance of responsibility is conditioned on, among other things, the defendant not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of Sentencing Guideline 3C1.1. So yeah, I see that. But of course, we've had some questions about that. So I'm wondering whether we have to navigate that, if at least with respect to the obstruction. Well, Your Honor, I'm sorry, I didn't know. Go ahead. I'm just trying to figure out where is the government. So the government is not claiming the unconditional, apparently unconditional obstruction reservation of rights in 6B, in terms of making the guideline calculations? It is cabined within 3C1.1. Okay. So then it is conditioned on acceptance of responsibility? Sorry, the acceptance of responsibility is in part conditioned on obstruction of justice, whether if he tries to obstruct justice. Right, the government's recommendation of it, whether the government can recommend that depends on the obstruction of justice later on. Yes. Then from there also, arguing the number of guns for which he'd be held responsible, the plea agreement does include those two footnotes in the factual basis where he says, they were my wife's, and I had no access to the ones in the storage unit or control over them, and I had no control over the ones in the truck, both of which the court found, as a matter of fact, were false statements. And then in addition to that, Your Honor, I would also go back to the plain error standard here. There was no allegation of breach of the plea agreement. Your Honors had asked defense counsel about this. He, Mr. Cousins, had essentially said at sentencing, sorry, we thought we could argue the number of guns. Well, does the plain error do anything here in terms of, I mean, are there other grounds, other elements of the plain error test that you'd suggest? It looks as if, I mean, is there prejudice? It seems like although there is a maximum sentence here, it does appear that these adjustments might've made a difference. So are you arguing any other part of the plain error test other than the error part? Oh, yes, we certainly are. As far as his affecting his substantial rights, he would need to show, under Puckett, he would need to show reasonable probability that but for the alleged breach, and obviously we don't concede there was a breach, but but for the alleged breach, the outcome would have been different. But the record here is robust in terms of what he said on the stand and how that conflicted with all of the in the record and what he said at allocution and how that conflicted with what he said in the record. But the adjustments here, if there weren't enough in the record to support the adjustments, the adjustments would have made a difference to his sentencing, right? The statutory maximum would not have mooted those questions. It would have come down below the maximum. Yes, but I think, Your Honor, what I'm saying here is that those adjustments would have applied whether or not there had been the the alleged briefs that the defense. Well, and how many, right, so some of those adjustments, I guess, again, dealing with the obstruction up and the acceptance of responsibility down, the district court wasn't bound with respect to either of them, one of them, both of them in terms of, right, setting aside the question of whether the government had an obligation to recommend them. The district court could have done at least the obstruction on its own or both. Once the court found, and in the court's remarks at sentencing, once the court found that he had obstructed justice in the way that he had, the removal of the discount for acceptance of responsibility then followed. And that is something that the court found on the record at 1 ER, I believe it's 23 and 24. And then again, at 30 to 34, the court makes clear all of the findings of fact that she has made in terms of his deliberate and willful attempts to obfuscate the record. And so that didn't turn on the government's performance is your argument? Pardon me? That didn't turn on the government's performance or non-performance of the agreement? While the government argued those and pointed them out, they were fairly obvious. Okay, I take your point. Could have come to those conclusions on its own. All right. All right. Thank you, counsel. We've taken over your time. Thank you. All right. We'll hear rebuttal now. Yes. I just wanted to point out that at sentencing, it's on the ER 296, Mr. Cousins did say, Your Honor, a part of the plea agreement is also there were guns found in a pickup truck and guns found in a storage unit. My client has the right to contest whether he had possession of those firearms in this case. And then the court said to the government, is that your position? No, is that your position reflected in the agreement? Trial counsel says yes. But doesn't that go to whether he's breaching it, not whether the government's breaching it? Well, the government specifically said, Mr. Connolly said, yes, Your Honor, we have adjusted the factual basis to make allowance for the fact that Mr. Higginbotham is not agreeing with the government that certain firearms that make up counts two and three were possessed by them. But that is all made clear in the factual basis. So he and my other argument is that, listen, he did not lie at sentencing. He admitted he had that gun. In his mind, that's what he was admitting. It didn't tell him he had to admit to all relevant conduct. He admitted he did what he promised to do. He admitted he complied with everything. He said he owned the gun in the car. They disputed whether or not he had the other guns. But that doesn't rise to the level of this obstruction of justice and that he didn't accept responsibility. He did. He said, I had this gun. I admit it. And we're going to dispute the rest. And that's clear in the plea agreement on AR-296. Even Mr. Connolly agreed that that was in dispute. And he was going to say what he was going to say. The government had all that evidence. There was no obstruction of justice. And not only that, the plea agreement was limited to what happened at sentencing. He didn't say, look, whatever you say at the evidentiary hearing, if you deny that you had those, that's going to. I thought it said post plea obstruction. Post plea obstruction. But he didn't do anything according to what. But he didn't obstruct justice. That was that was part of the deal that he could get up there and deny that he had those guns. He really felt strongly about it. And he apologized, I think, at the court to the court at the end saying, look, I really believe this, but if you don't believe me, that's fine. And all this stuff about Pops and whatever else, they knew all about that. They were listening on tapes. They knew what he was going to say. So it's not like they didn't know what was going to happen. All right. Thank you, counsel. The case just argued will be submitted.
judges: COLLINS, JOHNSTONE, ALBA